Thank you, Your Honor. May it please the Court. I'm Chris Landau, and I'm here today on behalf of the appellant, Evox. I'd like to reserve three minutes for rebuttal. I'd like to make three points here today. First, the District Court erred by dismissing our copyright claim on the pleadings, wholly independent of this Court's subsequent decision in Bell, because our amended complaint specifically alleged not only that Yahoo made our images available to the public after termination of the license, but that the public actually accessed and viewed those images. Second, the District Court plainly erred by dismissing our copyright claim in light of Bell, which holds that hosting images on a server accessible to the public is a public display, regardless of whether those images are actually viewed or accessed by anyone. And third, the District Court erred by dismissing our trademark claim on the pleadings as subsumed by copyright law. Copyright and trademark protect different rights, and we allege that Yahoo violated our trademark rights by affiliating itself with our gold-standard brand after terminating the license. Can I ask you about the last one first, because it's a separate question, I think, from the first two. First, I'm not sure this Court has recognized sort of an associational appropriation of trademark claim, but even if we had, we have a trademark claim. When the trademark is right on the photographs, how could anybody be confused, because that's what trademark law is supposed to do, protect confusion as to source. How can anybody be confused about the source of the photographs? Your Honor, that's a merits question. This got dismissed on the pleadings. Well, I know, but I think the actual photos were before the judge. They were attached to the complaint. Yeah, so it's not as if she went outside the record. She looked at the record, and she looked at the photographs and said, those photographs have your name on it. But that sounds, Your Honor, as like a summary judgment kind of view. Well, no, it's not, because you can't dispute, after all, having attached the photographs to your complaint, that they have the name of your client on it. And Judge Marshall says, gee, they have the name of your client on it, therefore you don't have a trademark claim. So why was she wrong in doing that? It wasn't because she went outside the four corners of the complaint. Well, that actually wasn't her view. I mean, you're creating a hypothetical, which is fair. I can affirm her on, I can impute views to her. Well, but you certainly, it would be very strange to affirm her on a ground such as confusion that she didn't actually articulate. We affirm district judges all the time. So answer my question. Why do you have a claim, given that your name was on the photographs? Because our trademark claim is based on our brand, Evox. They created a whole Tumblr blog that was called Evox on Tumblr to associate themselves with our brand. This is, as we allege in the complaint, the gold standard of photographic imagery. And again, I think one of the ways we know that the intellectual property rights, the trademark ones, are different than the copy runs is that we looked at, Yahoo paid for them separately. The license agreement here, if you look at ER 165 and 168, that's the basis on which the case was dismissed. The question that I've been asking is, how can you claim that merely posting a photograph on a blog that had your client's name on it was a trademark violation? As opposed to, I think you have a very strong copyright claim. We'll get back to it. But I just don't understand your trademark claim. Well, yeah, and I certainly don't want the trademark discussion to suck up all of the time here. But I think our point is that they separately violated our trademark rights by using the mark itself, the brand, and associating themselves with a mark in a way by creating this bespoke Evox on Yahoo blog. They were associating that that is an injury to us separate from the images. You may find that a far-fetched one. And all I would submit, Your Honor, is, again, I think the line between normally the standard for the dismissal and the pleadings under 12b-6 is a very de minimis standard to get across that line. It has to be plausible under Iqbal and Twombly. We totally concede that. But I believe, Your Honor, what we allege here crosses the line of plausibility. That may be in the eye of the beholder. We believe that we crossed it. But that is at least our theory. And certainly we don't believe the district court was correct in saying that this is necessarily subsumed by copyright law, given that there are different rights to protect. Yeah, see, I read it as saying, you don't have a trademark claim. The only real claim you have is a copyright claim, and I'm going to reject it. But go on to your copyright. I didn't mean to use up a bunch of your time. Sure. And with respect to our copyright claim, again, I think, as I tried to articulate at the beginning, we have two different avenues the court can take. One is a Bell Avenue, which is right there on the face of Bell. But frankly, that kind of suggests that this is a case where Yahoo, of all people, had a license to use our images on its blogs, and it did so. And these are kind of the grand central station of the Internet. So this isn't some case where you have to decide a funky situation where this is, you know, did the tree fall in the forest if nobody sees or hears it? That's just not what this case is. This is kind of at the heartland of copyright law that they didn't take down our images after terminating the license. So frankly, we think this is, at its most basic level, a pretty straightforward 12B6 case that the district court, you know, just misread the allegations of the complaint. And this is not a making available case. Okay. Yeah. And as to a certain limited set of images, I suppose that's true, right? I'm thinking of the allegations you have. I think it's paragraphs 34 and maybe 36. You refer to some specific images that you believe, in fact, were transmitted to, you know, to other computer users. But you think we could reverse the dismissal entirely just based on the specific allegations as to that more limited set of images? Yeah. Yes, Your Honor. I think we do. Again, I think the question is, are there facts here that plausibly, you know, with all reasonable inferences in our favor, could state a plausible which is at paragraph 34. We also allege that these Tumblr blogs have 500 million monthly visitors in 2016, that 9 billion people do Google searches for automotive topics. I think it's at least a fair inference that somebody found these images which were not hidden away. They were Google crawled. We also allege that. Did you find them after Bell? No. So, again, you don't have to. So, you may not have any damages, but if I take your copyrighted material and to use your analogy and post it in the forest, I violated the copyright laws. You may not be able to show any damage from it, but I... Right. Again, I don't mean to be downplaying, you know, Bell because it's a binding precedent of this court. And as Your Honor just said in the last argument, you know, the precedents of this court are what they are. We don't need to get in... In fact, it's not appropriate for this three-judge panel to get into the merits of Bell. My only point was to say it's a little bit strange to think of this as a Bell case in the first place because in Bell itself it was quite hard to get to the images. You had to kind of go to the pinpoint site or do a reverse image search. My only point here, it's like they're on... They're in Grand Central Station. I mean, they're open in Yahoo Autos and on a special Tumblr blog. And they are open. So it kind of doesn't raise the more esoteric issues that Bell raises, although we clearly win under Bell. Yes. I think that's true. I guess my problem with Bell is just that I don't see how it can be reconciled with Perfect Ten. And we don't have a rule, contrary to I think what you said in the brief. We don't have a rule in the circuit that says we follow the most recent decision. If there are two decisions in conflict, we have to correspond to call the case en banc. Oh, I'm sorry. I believe that's what we said in our brief, that it would go en banc. It's the other side that said you always follow the earlier decision. Sorry. Okay. But I don't see them as being reconcilable. And if it, in fact, if we needed to pick between the two because one dictated one outcome and the other dictated another, I think we would just be stuck with making a sua sponte en banc call. I hear your argument to say, and that's why you were kind of getting away from Bell, is that you don't even need to go there because we actually have allegations that plausibly allege... It just seems strange to say this is a Bell case and to ask these questions about these esoteric situations when this case just doesn't really present that at all. It would be, again, an odd case to take en banc or go to the Supreme Court to decide these. These are very significant issues of copyright law. And it just seems like this is an odd case to decide them because this is really a Rule 8 case and just a basic civil procedure case that the allegations in the complaint, when fairly read in our favor, certainly suggest that the public could have seen these images. And I think the district court read the complaint in a very crabbed way. And it's sufficient for you to reverse on the copyright claim by simply saying that, by simply saying this is not a Rule 8 way of reading the case. I don't think that's creating any big law. That's kind of a mem dispo kind of thing to say this is the way the law works. And the district court appears to have read the complaint too stringently. I think everything you say is persuasive. But since you're here, and since the reblog question is so interesting to me, tell me how a district court should dispose of that. Something is legally... Copyright hasn't expired. It's on the Internet. Some person reblogs it afterwards. And it's on Yahoo's servers. Is that a violation? It certainly would... There would be some questions about the volitional aspect with respect to the defendant's conduct. I mean, the defendant has to take some volitional act. That's right. And so I think that would raise a different question if the only issue here were it was not on Yahoo's servers to begin with. Somebody else reblogged it and that put it on Yahoo's So that takes me back in this case to... There's two ways your images are displayed. One is on a Yahoo site and the other is on Tumblr sites? The images that appear on the Tumblr site are hosted on Yahoo's blogs. In other words, Yahoo hosts it on its site and those are the images that populate the Tumblr blog of Yahoo. likes what's on the Tumblr blog. That, in this case, is just evidence that, in fact, the people who liked it had to have access to those scenes. Right. So in your view, they're responsible for the Tumblr blog? Well, no. I think the limited point that we're making is that how can these folks say, well, you have no suggestion that anybody actually liked or accessed those images when paragraph  That's why I'm asking the question. Do you have a separate claim for the reblogging or is your claim simply that the images remained on their server? The latter, Your Honor. We do not have a separate claim for reblogging. The only defendant here is Yahoo and we're not alleging... The reblogging is just evidence that they were available? Precisely. And, in fact, it's irrebuttable. And, again, paragraph 34, which I believe Judge Watford, you yourself cited, specifically says that Yahoo's own records show that after the termination of the license on August 2nd, Tumblr users liked or reblogged the copyrighted images from Yahoo's Tumblr website. In their response brief, they just say, well, it's not clear in this allegation that it was afterwards. It's right here on the face of it. And they say, well, they don't say how many there were. Again, that's going well beyond the kind of Rule 8 standard that you don't have to plead with particularity. You don't have to say, well, Jane Doe on August 25th at 8.59 p.m. reblogged or liked this image. All we're trying to say is, is there enough material in the complaint that, when read with all the inferences in the plaintiff's favor, gives rise to a plausible claim? After the second demand letter, what did Yahoo do that was different with respect to the images? Did they do anything? Yes, Your Honor. After the second demand letter, now we're talking summer of 2019, I believe June of 2019, they actually took them off their server. So then that's what they were supposed to have done at the time they terminated the license. And again, Yahoo is a big player in this industry. I mean, this is not some mom and pop shop. Yahoo should have done that within the 90 days of terminating the license. But at that point, they took it off the server. Then it was totally inaccessible. And so at that point, they no longer violated our copyright. I would like to reserve a little more time, some time for rebuttal if there's no further questions. Of course. I mean, if you have one last point you want to make, we'll certainly give you a couple minutes for rebuttal. No, I guess the only thing is to say with respect to the copyright claim, I certainly think that we are also in that area of where we're on a motion to dismiss, and it goes back to the plausibility. And we believe that the allegation that, you know, Evox's goods and services are recognized by the Evox trademark, it's kind of like the Rolex of this industry. And again, it may seem unlikely to you that we can prevail on that, but that at least we should have a shot at getting to summary judgment or further. Can I ask one more question on the trademark claim? Judge Hurwitz was suggesting that he doesn't see how, given that your client's name is on the photos, there could be any confusion as to the source of the goods, and that seems to me to be right. I understood your response. Maybe it was in your reply brief to say, well, maybe that's correct, but we're relying upon confusion as to association or affiliation. A hundred percent. Is that – and what Judge Hurwitz said is I'm not even sure we have a case that says that there's a trademark claim for anything other than confusion as to source. Is there a case that you have? We cited a number of cases, Your Honor, all of which – in both our opening brief and reply brief, all of which were cases about licensees which were using the mark on the original goods to which they had a license. And there was a – then after the license expired, they became an unauthorized use, and they continued to use the mark. So, again, I think there can be a claim for affiliation. Just think a second about if Rolex is sponsoring a Formula One event or something like that. The Formula One wants the cachet of Rolex, of that brand. And, you know, if there is – you know, it's the affiliation. It's not confusion as to the source of goods because the Rolex is not identifying a good in that way. And, again, Your Honor – And I guess I read those cases as saying you might establish in some cases through this associational claim the possibility that there was a confusion as to the source of something, but what lies at the bottom of all trademark law is confusion as to the source. I think this is the plain language of the statute, Your Honor. If you look at Section 43, which is 15 U.S.C. 1125a1a, it talks about confusion or mistake or to deceive as to affiliation, connection, or association of such person with respect to another person or to the origin, sponsorship, or approval of his or her goods or services. So the statute itself talks about origin, sponsorship, or approval. So it's not only about origin. Origin cases are kind of a paradigmatic case. We think about it. Am I right that all those other cases involve the licensee selling goods after the copyright expires? I don't know. That's just opposed to having it sitting there. I'm not sure. I'm not sure, Your Honor. I think one of them was a PGA case, if I recall. I'll take a look. It used to represent the PGA tour, so I'll take a look. Yeah, but I think these marks have a value which can be taken if somebody associates themselves. Again, Rolex is a good example of somebody wanting the cachet of Rolex. As unlikely as it may seem to you, we've alleged that we are the Rolex of photographic automotive images and that they wrongly associated themselves with our brand, again, at least to get into the summer judging phase. Okay. Thank you. Thank you. We'll give you a couple minutes for rebuttal. Let's hear from counsel for the defendants. Thank you, Your Honor, and may it please the Court, Blaine Evanson for the Appleese. For there to be an infringement of the public display right, there has to be an actual display of the work being asserted, and that display must be public. And so this potential to be displayed or available publicly standard is not consistent with the Copyright Act, Supreme Court precedent, or 15 years of this Court's precedence. We're on, as your friend reminds us, on a motion to dismiss. It's uncontested for purposes of this motion, and I think you probably don't contest it at all, that sometime after your copyright license expired on a site that Yahoo ran, there were pictures of the copyrighted images. Yes? I don't think that is a fair reading of the allegations, Your Honor. It says we asked you to take them down, and they remained up after the license expired. So why isn't that a fair reading? The allegation, Your Honor, is that they remained on a server that was publicly accessible, not that they were ever displayed. Okay, fair enough, fair enough. They remained on a server that if someone knew the right URL, they could access, correct? Correct. So what you're asking us on the motion to dismiss to assume is that no one could have possibly accessed that URL. That's not what we're asking you to assume, Your Honor. We are asking you to hold them to their pleading standard to actually plead that images that were stored as ones and zeros on a Yahoo server were, in fact, displayed to someone, and not only to someone. Well, so then they say in their complaint, we know they were displayed to someone because after the date of the expiration of the copyright, they were reblogged. Now, there may be other explanations for that, but certainly doesn't that make it plausible that they were – assuming that they had to be displayed to someone, separate issue. Doesn't that make it plausible that they were displayed to someone? Let me respond in two ways, Your Honor. The first is that the allegations do not – the 67 reblogging allegations that you referenced do not even say that that occurred outside the license period. So they have to at least plead. Can we look at paragraph 34 and just – I don't know. How do you reconcile what you just said with paragraph 34 of the complaint? Do you have it in front of you? I don't have it in front of me. Maybe you can grab it. Grab it, yes. Yeah. The license was terminated in August of 2016. Is that right? Correct. Okay. So there's specific reference there to dates after that point at which images were distributed. Okay. I'm sorry, Your Honor. I thought you were referring to paragraph 45. Paragraph 45 is the 67 that I was referring to. Paragraph 34 does, in fact, say that there were likes or some activity after the license period. It identifies four time periods – October, February 2017, November 27, and June 2016. Okay. I'd love to just hear you – your response to that specific paragraph because that's what I zeroed in on after kind of sorting through everything. And it just seemed to me, as your opponent has argued, that we're just trying to deal with Tuomly and Iqbal. They've said this. You might be able to disprove it. But isn't this a plausible allegation that at least some people actually got the images distributed to them? So I want to respond to Your Honor, but I don't want to die on this hill. So I want to make sure I get to my next point. Take it in any order you want. I just want to hear what you have to say about paragraph 45. Well, let me start then with the next point, which is that even if their characterization of the complaint is accepted and you could infer that this is an allegation that someone viewed, and even that the public viewed these images after the expiration of the license, that does not allow their complaint to proceed on 409,000 images. And that's the problem with counsel's argument today, is that this court cannot avoid the question of whether publicly available but never displayed images can give rise to a copyright infringement claim, because if the court accepts these allegations as they characterize them, it could only reverse on those instances that are identified in the complaint. But isn't that a something? See, now I'm back to where your friend was. They've made an allegation here. It may be that their actual claim is limited to a certain number of images, but I can't tell from this complaint whether or not there were. They said there were. Some of these images were viewed, and we believe others were too. Maybe they weren't. Maybe you can show in summary judgment that 600,000 of them were never viewed during the time period. But that strikes me as a summary judgment matter. They've made an allegation of copyright infringement. You can show it was relatively minor. You can show on your second hill, perhaps, that there wasn't any infringement at all. But why isn't that enough to say that the judge was wrong in dismissing the entire complaint with prejudice? I'm not sure we should now parse the complaint and say, well, here's a set of facts we might imagine that might allow you to dismiss others, because I don't see allegations in here about 619,000. Are there? It's 409,000. 409,000. But where are the allegations about 409,000? The allegation in the complaint, Your Honor, is this publicly available standard. Right. And it's also argued in their briefing. Right. So they said some of these were publicly available. They may not have specified each one, but they gave some examples of ones that they thought were publicly available. So why should, at this point, we parse the complaint to say, well, maybe as to these but not as to others? We just don't know whether others were made publicly available or not, do we? Your Honor, in the VHT case and in the Perfect 10 case, the court did parse the buckets of copyright infringement claims and look at those where the work was displayed. In the 12B6 status? Those were not in the 12B6 cases. But my point, Your Honor, is that these are very different claims. And counsel is arguing, you know, nothing is – Well, I don't think he's arguing. I'm just trying – what's in front of us is a judge having dismissed the complaint at the 12B6 stage. And it's early days. And if she erred in dismissing it at the 12B6 stage, unlike those other cases that came up on summary judgment or after trial, and we had to parse it, we had to look at what portions of the judgment were correct or incorrect, it seems to me all we need to do here is say, this is incorrect for at least one reason, and you guys can go at it in front of Judge Marshall on remand about the other reasons why you might win on summary judgment or ask other parts of a claim. One problem with that, Your Honor, is the ambiguity in the case law created by Bell. If it were not for Bell, then I – and, again, the court accepted this version of the allegations, which, you know, we don't think are enough. Separate from whether the works were displayed, there's no allegation in the complaint that they were displayed publicly, that they were displayed to a substantial number of unaffiliated people as the text of the Copyright Act and the Supreme Court's area of decision required. That's not alleged anywhere in the complaint. That even of these images that they say were liked or reblogged, there's no allegation that they were viewed or displayed to a substantial number of unaffiliated people. But, again, even putting those aside and accepting this characterization of the allegations, if Bell creates some uncertainty in the case law in this court, as, you know, we see in counsel's papers. And Bell was, as, you know, Judge Wadsworth's questions indicated, absolutely conflicts with Perfect Ten, conflicts with VHT, conflicts with the Copyright Act, and conflicts with Supreme Court precedent. It was dictum. It was not well-reasoned dictum. I don't think the court has to call the case en banc in order to – I don't see how we can say it was dicta. I mean, the panel did not have to take the path that it did, but it wasn't just some, like, random aside on the way to getting to some other point. It was an entire subsection of the opinion that could have stood on its own if it had come out the other way, perhaps. And it was definitely reasoned. I mean, I wouldn't accuse our colleagues of having engaged in just some off-the-cuff remarks there. So that's why I'm stuck thinking that, boy, if we had to pick, I don't know how – we can ignore Bell because what was said in subsection A or whatever it was, you know, was dicta. That's what I'm struggling with. Well, let me give you three responses. First of all, the discussion of the public display right was not necessary to the court's decision because there was acknowledged copying. And the application of the de minimis doctrine applied in that case without respect to whether there was a public display, without respect to – or rather, it didn't apply regardless of whether there was a public display or not. So that was wholly unnecessary to the decision. And – Assume for a moment we're not going to ignore it. So tell us how – tell us why – what we would do if we – how we would harmonize the two or what we should do if perfect 10 controls. Okay. Two points on that one. The first is it's not well-reasoned dicta, not because it was – I know, but I just asked you to assume that we were going to treat it as binding. Okay. Oh, treat it as binding. Okay. If you treat it as binding, there are two things. The first is there's plenty of language in the Bell opinion. There's, you know, there's a statement about it being publicly available being enough. But the court at least assumed that the images were continuously transmitted from the server to where it was displayed. There's language in the opinion that says that. Now, there's ambiguity because the court also says this making available standard. So that's one is, you know, is you can interpret it. And the second one is, you know, call the case en banc, general order 5.2. Let's assume for a moment perfect 10 overruled Bell. It didn't, but let's assume it did. The other way. Bell overruled perfect 10. Under Bell, don't you lose? Under Bell, we – I mean, if Bell is read in the way that is being suggested, that any file sitting on a server, regardless of whether it is ever sent from that server and displayed anywhere in the world, if that is a public display of a copyrighted work, then. And see, my problem is, and I'm sorry I had the cases in reverse order, we're required to follow Bell. We can say, we can tell our colleagues, gee, we're confused. We think Bell and perfect 10 conflict and you ought to take them up. That's en banc. But I think we're required to follow Bell. It's an opinion of this court. If we find that there's a plausible pleading of actual display and distributorship, then Bell is totally irrelevant, isn't it? I don't think so, Your Honor, because I think, again, going back to my first point, the court should remand only on what's alleged in the complaint and not on the broader 409,000 images that they are asserting. Well, see, but I'm going back to 409,000 images. I'm looking at the complaint. The complaint doesn't specify 409,000 images. Their eyes may be too big for their stomach. But the real question here is whether they've plausibly alleged a copyright violation. The extent of that violation can be litigated later, but it's not like they have 409,000 counts. So, Your Honor, that's an important point because they do have 409,000 copyright infringement claims. The Petrella case from the U.S. Supreme Court says that every instance is a claim. I'm sure they have 409,000 claims, but I'm looking at the face of the complaint. It's one count for copyright infringement. That's correct. But my point is that every one of those images is its own copyright. They have to prove a public display, and every one of those public displays is its own action of copyright infringement if it's proven. But, see, I understand your argument that none of them were a public display. Probably lose that under Bell. But what I don't understand your argument is that we ought to, even though the complaint doesn't contain separate allegations about 409,000 minus five images, we should at this point issue a ruling that says there may be some other images out there that don't fit within the Bell construct, but we don't know what they are, and you should dismiss them district judge. That just strikes me as beyond our capability. Thank you, Your Honor. That's not what I'm arguing. So thank you for raising that. My argument is not that the court is required to figure out exactly how many of the 409,000 are actionable. It's that the court should not reverse and remand and duck the question of whether a publicly available document is publicly displayed and just never pulled off the server. This is all of a piece, if you'll forgive me. That's why I asked if Bell controls, don't we have to do that? If Bell controls and, you know, you don't distinguish it. Let me tell you just briefly why I don't think you need to follow Bell because the reason it's not well-reasoned dicta is not about whether, you know, your colleagues spent a paragraph or a sentence on it. It's that there's no case that I'm aware of from this court saying you follow well-reasoned dicta that creates an intra-circuit conflict. I mean, whether it's well-reasoned or not is not a function of whether, you know, they cited enough case law or whether, you know, it was considered or not. It's that there's no case saying you follow well-reasoned dicta that creates an intra-circuit conflict. Go back to Judge Watford's question before that I think got lost. Why is this inconsistent with Perfect Ten? I mean, why isn't this a plausible allegation that a substantial number of people could see it? After all, they were re-blocked. They were obviously available to people who cared about looking at these images. Why isn't even under Perfect Ten this enough to get past a 12-PC? At least a reasonable inference. So Perfect Ten says until a file is called off the server, it's sent from the server to a terminal that then displays the file. Only then is there a public display. Up until that point, it's just ones and zeros sitting on a server. So that's the problem here. If there are actual instances where a file was pulled off the server, displayed, and displayed to the public to a substantial number of people. So that's exactly what happened? Isn't that exactly what he's arguing? Well, again, if you accept their construction of the allegations, then for a small number that's true. But it's not true for every single file that sat on the server. If a file sitting on the server is ones and zeros, it's not being displayed to anyone. It's certainly not being displayed to the public. What you're saying is that perhaps certain of the images were never clicked on. Is that it? Correct. But the point is that with respect to the ones that were clicked on, isn't that a public display and public distribution? It's only a public display if it comes from the server and is displayed to a substantial number of unaffiliated people. If one person or five members of a family or EVOX's investigator clicked on an image and it was shown just to them, that's a display, but it's not a public display. At the 12v6 stage, the allegation that some of these images were reblogged to a Tumblr where people interested in these images would typically go, doesn't that get them passed a motion to dismiss? They may have very few instances that they can prove in the end, but here we are. They allege this. Why isn't that enough to get past the 12v6 motion? There's not one allegation in the complaint that those images that they say were reblogged were displayed to a substantial number of unaffiliated people, and that's what AREA requires. That's what the Copyright Act requires. Isn't it a reasonable inference simply from the fact that Yahoo paid money to put those images on their server? That they anticipated that there would be millions of people who would be clicking on at least some of them? I don't think that's a reasonable inference that millions of people viewed any particular image just because Yahoo paid to license it. I'm out of time. Can I close with just one point, Your Honor? Of course. And that is that how the court resolves the publicly available standard for copyright infringement, whether that's a viable claim under the public display right, will have broad implications beyond this case. EVOX has filed a dozen of these cases, and if it becomes the law of the circuit that a file or thousands of files simply sitting on a server are being publicly displayed because they're publicly available, then that is going to open the floodgates to this sort of copyright troll litigation. And it just cannot be the case that if I have a Google Drive folder and I lawfully buy some media and I let it sit on that folder, I don't share the link with anybody, and it sits there for a couple years, that the people who licensed me that media can come sue me for astronomical statutory damages. They're asserting $300 million in statutory damages in this case. It will open the floodgates to litigation that has nothing to do with protecting the value of intellectual property and is only a windfall to copyright holders and a penalty to licensees. But at the end of the day, you did disconnect them, didn't you? Your Honor, and that's the point. The statute does not make it a public display simply because I don't password protect the folder. That's the point. It has to actually come out of the server, go to a substantial number of unaffiliated people, and then it can be a public display. But just sitting on the folder, whether or not I password protect it or not, it's not being publicly displayed. Thank you, Your Honor. Thank you very much. Let's put two minutes on the clock for rebuttal, please. Very quickly, Your Honor. They act as if this is wildly implausible that people would have seen these images. I think as Judge Vitelliano just said, that's why a company like Yahoo puts these things on Tumblr, eVox on Tumblr and the Yahoo Autos blogs. I mean, these are, again, the grand central station of the Internet. So the idea that we have to kind of say, well, you know, this particular image of thousands of images. And by the way, I think Judge Hurwitz, going back to the call that you had, I don't see 409,000 anywhere in any of the complaints. So I think that's a number. My guess is that you'll come up with a number if you go back.  exhibits A and B of the complaint have the copyrighted images, and I don't think that's 409,000 images. But again, I don't think the answer is that a plaintiff in a copyright case has to go through every image and say, if we license you thousands of images, that, you know, image A was accessed on this day. I think it's enough to say, this is being put in the grand central station of the Internet, okay, where 500 million people visit Tumblr blogs every month. There's, you know, 14 billion automotive searches every month. Okay, I think it is a fair inference to say that somebody like Yahoo! Autos is being visited when these are being, you know, again, cached by Google and all that. Let me ask a question that goes past the complaint, because it goes to the issue that your friend raises about the potential conflict between these cases. Let's assume you got to Discovery, and Yahoo! keeps a record of how many visits show up on a site, and it found that three people viewed one of the images. Would that be a copyright violation? Absent bail? If there was a display. I mean, I guess your question is, how much public is public, you know, prior to bail? I think the copyright, it doesn't go on the number of people. It goes on the nature of the display. If you have a portrait in your house, that is not displayed to the public. If you put it on a billboard in Alaska by a public road, it's not only infringement if you say a substantial number of people had to see that billboard. I'm asking what a substantial number of people is in this context. I think it is being publicly displayed in a way that is open to the public. You don't actually, the statute doesn't require a substantial number of people. That language is not in the statute. It says displayed in a place open to the public. In our brief, I think it's always good to try to have congruence between the digital world and the physical world. And to me, I think the best analogy is a billboard. If you put a billboard in a public place by the side of a highway, then you don't have to, as a plaintiff... I think what Judge Hurwitz is saying is if the defendant then has data that shows that nobody looked. Well, again, I think then you really... At that particular instance, nobody looked. Then you face the bail issue, like if nobody looked. Then you might even have Article III Spokio issues. That raises a whole other thing. I guess my point is only to say we are so far from those kinds of questions in this case when we're talking about Yahoo autos and eVox on Tumblr blog. Again, this case is kind of made for hypotheticals, and I think they're great, and this is what you all do for a living and what we do as advocates to try to respond to that. But I think there's an air of artificiality in thinking about this case as raising those kinds of esoteric issues. And again, I think it is very odd. The suggestion that was just made is that a plaintiff has to basically be able for each photo to say that, you know, somebody saw that photo. I mean, our 67 likes or blogs is just an example by way of saying that these are very well-transited sites. We've actually seen some of that. But that doesn't mean that we only get to proceed with some 67 particular claims. It's a way of basically saying it's a reasonable inference to say that all of these photos were the kind of things that a lot of people accessed. This is not some strange situation where they're being kept in some little tiny corner of the Internet. This is right out there in the main drag of the Internet. The only other thing I think with respect to Bell, I think the other side confuses what this court means by reason. I think you had it exactly right, Judge Watford, and you said stray comments don't count under the reason dicta rule. But if a panel spends two pages addressing something, that is considered reason. Regardless of whether it's wrong or whatever, that would trigger under this court's rules the requirement to go en banc. Again, I don't think you need to go there to resolve this case. But certainly we win under Bell, I think, unquestionably. But you don't need to get to Bell to rule in our favor. Okay, great. Thank you very much. The case just argued is submitted. Appreciate the helpful arguments from both sides.
judges: WATFORD, HURWITZ, Vitaliano